Argued and submitted October 31, 2006, affirmed April 11,
petition for review denied July 24, 2007 (343 Or 160)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MERVIN BARTEAUX,
*Defendant-Appellant.*

### Multnomah County Circuit Court
020533162; A120506

157 P3d 225

Louis R. Miles, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Kaye McDonald argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

Defendant was convicted by a jury of multiple counts of sodomy in the first degree, ORS 163.405(1)(d), unlawful sexual penetration in the first degree, ORS 163.411(1)(c), and sexual abuse in the first degree, ORS 163.427(1)(a)(C). Each count of the indictment alleged that the victim was incapable of consent by reason of mental defect. Defendant argues that there was insufficient evidence of the incapacity to consent. *See* ORS 163.315(1)(b); ORS 163.305(3);[1] *State v. Reed*, 339 Or 239, 118 P3d 791 (2005). Because the state's expert witness offered testimony that demonstrated "the necessary link between the victim's mental condition and her incapacity to consent to sexual contact," we affirm. *Id.* at 246.

■ We view the evidence in the light most favorable to the state to determine whether a rational factfinder could have found beyond a reasonable doubt that the victim was incapable of consenting by reason of mental defect. *Id.* at 243. Defendant admitted that he had "tak[en] advantage of" his mentally disabled adult cousin, L, by subjecting her to sexual contact. It is undisputed that L has a mental defect, and that there was sexual contact between L and defendant on numerous occasions. Dr. Genevieve Arnaut, a licensed clinical psychologist, testified for the state that L has an IQ of 53 and that her mental capacity is equivalent to that of an average six-year-old child. Arnaut concluded that L suffers from mild to moderate mental retardation. The sole issue before the jury was whether L's mental defect rendered her incapable of consenting to sexual contact with defendant.

This case has certain similarities to *Reed*. In both cases, a family member was accused of sexually abusing a mentally disabled adult woman over a period of time. The central issue in both cases was whether the victim was incapable of consenting by reason of her mental defect. But there the cases diverge. In *Reed*, the victim's testimony established that she had resisted the defendant, and the expert witness's

---

[1] ORS 163.315(1)(b) provides that "[a] person is considered incapable of consenting to a sexual act if the person is * * * [m]entally defective." ORS 163.305(3) defines "mentally defective" as meaning "that a person suffers from a mental disease or defect that renders the person incapable of appraising the nature of the conduct of the person."

testimony "did not address either directly or inferentially the element of 'incapable of consent' due to 'mental defect' in the sex crimes at issue." *Id.* at 247. Under those circumstances, the court determined that there was no evidence from which a rational juror could conclude that the victim was incapable of consent by reason of mental defect. By contrast, in this case, it was disputed whether the victim resisted the defendant, and a rational juror could infer from Arnaut's testimony that the victim's mental defect rendered her incapable of exercising judgment to make a choice about whether to engage in sexual acts with defendant.

■        Under ORS 163.305(3) and ORS 163.315(1)(b), a person is considered incapable of consenting to a sexual act if the person suffers from a mental defect that prevents her from exercising judgment and making choices based on an understanding of the nature of her conduct. *Reed*, 339 Or at 244. That standard must be applied "in the context of interactions with other persons, such as offers and proposals from other persons to engage in certain kinds of conduct." *Id.*

Part of the context of the interaction between defendant and the victim in this case is the fact that defendant is the victim's cousin. Arnaut testified that the victim was unable to consider her options, such as the option to defy her cousin, because of her mental defect.

"My concern based upon the level of functioning that I saw and something that I noted in my report is that I was— it felt to me that she would be unable to come up with complex or novel solutions to a problem. So, for example, she couldn't even rephrase something when I wasn't understanding what she was telling me. Put her in a more complex situation, [I have] concerns she would be able to problem solve very well *or even know there were certain avenues open to her.* * * * So I would think her problem-solving skills were relatively limited, as would be her verbal skills, in dealing with the situation. Another concern that I would have is based on my reading of the literature in this area, which indicates that *individuals diagnosed with mental retardation or disabling conditions are often particularly vulnerable to individuals in the family, because they are trained over a number of years to become dependent upon family members and not to question what family members ask them to do and have difficulty problem solving around*

*those issues.* So I think she was doubly vulnerable * * * because of this being an alleged family situation as well as because of her—the disabilities that were evidenced to me in the evaluation."

(Emphasis added.) Arnaut's testimony that the victim may not "even know that there were certain avenues open to her" and that she was unlikely to "question what family members ask [her] to do" supports the reasonable inference that the victim's mental defect prevented her from understanding that she could decline defendant's sexual advances. Without such an understanding, the victim was unable to "exercise * * * judgment and * * * mak[e] choices based on an understanding of the nature of [her] own conduct." *Reed*, 339 Or at 244.

Arnaut further testified that the victim "was unable to understand how to respond, how to say no, how to do anything different in the situation other than to keep going over the same responses that she tried and tried and tried and had not worked previously." According to defendant, that testimony demonstrates that the victim lacked the capacity to effectively resist defendant's advances, but it does not demonstrate that she lacked the capacity to consent to them.[2] We question the usefulness of defendant's distinction, and we conclude that a rational juror could have inferred that L lacked the capacity to consent from Arnaut's testimony that L's mental defect prevented her from "understand[ing] * * * how to say no."

Although Arnaut's expert testimony is, alone, sufficient to support the jury's verdict, the state also introduced defendant's acknowledgment that he believed L lacked the capacity to consent by playing for the jury an audiotape recording of the interview of defendant conducted by Detective Susan Fachini:

"Fachini:  Alright. Mr. Barteaux, do you know why you're here at the Detective Division * * *

---

[2] Logically, evidence that a victim resisted a defendant's sexual advances does not conclusively demonstrate that the victim had the capacity to consent. *Cf.* ORS 163.315(2) ("A lack of verbal or physical resistance does not, by itself, constitute consent but may be considered by the trier of fact along with all other relevant evidence.").

"Barteaux:   Yes, Ma'am.

"Fachini:    * * * of the Police Bureau? Can you tell me why?

"Barteaux:   I'm here because I assaulted, sexually assaulted my cousin, [L].

    "* * * * *

"Fachini:    You realize [that L] suffers from a mental defect?

"Barteaux:   Yes, ma'am, I do.

"Fachini:    And diminished capacity?

"Barteaux:   Yes, ma'am, I do. But she is . . .

    "* * * * *

"Fachini:    In your estimation, is [L] a woman who can consent?

"Barteaux:   To a degree. To a degree.

"Fachini:    Did you take advantage of [L]?

"Barteaux:   Under the circumstances, yes.

    "* * * * *

"Fachini:    Okay. All right. Did [L] ever resist your advances?

"Barteaux:   No, ma'am. Not really.

"Fachini:    But you know that she is not capable of consent?

"Barteaux:   Yes.

    "*.* * * *

"Fachini:    Why did you sexually abuse [L] when you know that it's wrong? Well, first of all, do you know that it's wrong?

"Barteaux:   Absolutely."

Defendant's acknowledgment, based on his interaction with the victim, that she was not capable of consent lends further support to the inference that the victim did not understand that she could choose whether to engage in sexual relations with defendant.[3]

---

[3] We note that, given the nature of the crime, defendant's intent is not at issue here and he raises no defense under ORS 163.325(3) ("[I]t is an affirmative defense

We do not disagree with defendant that there was also evidence from which the jury could have reasonably inferred that the victim was capable of consenting to sexual contact. The existence of that evidence, however, does not affect our analysis. For instance, a reasonable juror could infer from the victim's own testimony that she understood the moral implications of having sexual contact with defendant. *See* 339 Or at 245. As the Supreme Court explained in *Reed*, "[t]he jury, however, was free to reject her testimony and to rely on other testimony and evidence relevant to its determination whether the victim's mental defect had rendered her incapable of consenting to sexual contact." *Id.* at 245. Thus, here, we are concerned only with whether there was evidence that supported the jury's finding that the victim lacked the capacity to consent by reason of her mental defect; we do not sit as factfinder and choose between competing inferences.

Viewed in the light most favorable to the state, Arnaut's testimony demonstrated "the necessary link between the victim's mental condition and her incapacity to consent to sexual contact." *Id.* at 246. A rational juror could have inferred from that testimony that the victim was incapable of consent under ORS 163.315(1)(c) and ORS 163.305(3) as those statutes were construed in *Reed*.

Affirmed.

---

for the defendant to prove that at the time of the alleged offense, the defendant did not know of the facts or conditions responsible for the victim's incapacity to consent."). His statements to Detective Fachini are relevant here simply because defendant knew the victim well, and thus, his belief about her incapacity to consent provides some evidence concerning whether she did, in fact, have such capacity.